UNITED STATES of America, Appellee,

v.

Odell MARSHALL, Appellant.

No. 74-3038.

United States Court of Appeals,
Ninth Circuit.

March 24, 1976.

Rehearing and Rehearing En Banc
Denied June 4, 1976.

Barry Tarlow (argued), Los Angeles, Cal., for appellant.

Darrell MacIntyre, Asst. U. S. Atty. (argued), Los Angeles, Cal., for appellee.

OPINION

Before BARNES, ELY and WRIGHT, Circuit Judges.

BARNES, Senior Circuit Judge:

The case presently before us is comparable in several respects, to that of *United States v. Marshall,* No. 74–2070, 526 F.2d 1349 (9th Cir. 1975), amended by order (2/10/76), although in other aspects it differs. In No. 74–2070, the appellant Odell Marshall was found guilty, as his former associates and co-defendants Harris, Strick-

land, and Macias, had previously been, of, among other offenses, conspiracy to possess and distribute heroin. Co-defendant Tuminello was previously acquitted of that charge in the District Court.

In this case, the defendants Odell Marshall and James Arthur Maxwell were found guilty of a lesser offense (21 U.S.C. § 844(a)) included in one count of an original five count indictment, charging simple possession of a controlled substance, *to wit,* cocaine, after a jury was unable to agree on the greater offense originally charged— "knowingly and intentionally possess[ing] with intent to distribute approximately 1,350 grams of cocaine" in violation of 21 U.S.C. § 841(a)(1) [Count Five—C.T. p. 348].

■ We affirmed the conviction of co-defendant Maxwell, No. 74–3321 (unpublished), decided June 25, 1975. His sole ground of appeal was based on the insufficiency of the evidence against him. Appellant Marshall raises that same issue by relying on his co-defendant's brief. We find no merit in that contention here just as we found none in Maxwell's appeal.

After hearing oral argument in this case, we ordered that the original submission of the case to the panel hearing Marshall's appeal be rescinded; to be resubmitted after the first *Marshall* case (No. 74–2070) was decided. This procedure was employed because two important issues raised by Marshall in No. 74–2070 were likewise raised in 74–3038, *i. e.,* (1) the tax liens and levies, and (2) the introduction of polygraph test results.

I. *The Law as to Tax Liens and Levies and The Introduction of Polygraph Evidence.*

We are satisfied that the law as to these two issues was established by this Court's opinion in *United States v. Marshall,* No. 74–2070, 526 F.2d 1349 (9th Cir. 1975), as amended by Order of this Court, filed February 10, 1976, with a Denial of Rehearing. We approvingly cite that case as controlling law. *See also United States v. Alexander,* 526 F.2d 161 (8th Cir. 1975).

We turn to the other issues in this case by a recital of the facts:

II. *Facts.*

Marshall was arrested at Maxwell's house by Los Angeles Police Department Officers in January, 1974. Police had placed the home under surveillance after two informants had stated that "James Maxwell was dealing heroin and cocaine for Odell Marshall from that location." *See* Suppression Hearing Transcript 32. Police followed an automobile driven from that location and stopped and searched the driver. Marijuana was found in her purse. She was arrested and police returned to the Maxwell residence with her three children. The officers knocked on the door and identified themselves.

Hearing panicked activity inside, one officer (Niles) moved to a kitchen window and purportedly observed Marshall emptying a plastic bag of white substance into the garbage disposal. He also observed Maxwell run towards a bathroom with a mirror on which there was a mound of white substance. He then heard the toilet flush four times. Another officer stationed himself at the back door, heard persons running about, but did not see Maxwell carrying the mirror. He entered the house and observed and apprehended Maxwell leaving the bathroom. Inside the bathroom, the officer observed that the toilet was overflowing and found a plastic bag, broken mirror, and strainer.

Miniscule quantities of cocaine were found in the garbage disposal and on a matchbook and measuring spoon in the kitchen.

Appellants contended that the kitchen window had been closed and covered with curtains so that Officer Niles could not have observed the activities he reported. Marshall admitted, however, that he had panicked when he heard the police knocking, had seen a bag of something on a table, and had put it in the disposal based on the fear that he would be wrongfully arrested and convicted if it were found in his vicinity or possession.

### III. *Motion to Sever at Suppression Hearing.*

In arguing that the District Court erred in not granting a severance, Marshall largely relies on the ground that he was denied the use of exculpatory testimony from his co-defendants which allegedly would have been available to him were the co-defendants not tried with him. In examining Marshall's contention, we note that the controlling authority in this Circuit is the recently decided case of *United States v. Campanale,* 518 F.2d 352 (9th Cir. 1975), where we stated:

"The granting or denial of a severance under Rule 14, Fed.R.Crim.P., is a matter within the trial court's discretion and reversal is appropriate only if abuse of that discretion has been shown. [cases cited].

"The test is whether a joint trial was so prejudicial to a defendant as to require the exercise of the trial judge's discretion in only one way, that is, by ordering a separate trial. [cases cited].

"The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. [authorities cited]. The defendant must show more than the fact that a separate trial might offer him a better chance of acquittal. [case cited].

"The ultimate question is whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. [cases cited]."

*Id.* at 359. *See United States v. Thomas,* 453 F.2d 141, 144 (9th Cir. 1971), *cert. denied,* 405 U.S. 1069, 92 S.Ct. 1516, 31 L.Ed.2d 801 (1972); *United States v. Sherman,* 430 F.2d 1402, 1407 (9th Cir. 1970), *cert. denied,* 401 U.S. 908, 91 S.Ct. 865, 27 L.Ed.2d 805 (1971).

Applying the above principles to the facts before us, we hold that the district judge did not abuse his discretion in refusing to grant a severance. Here, despite Marshall's representations, his co-defendants did testify at trial. Hence, Marshall suffered no prejudice, and his argument is wholly without merit.

### IV. *Identity of Informants.*

Marshall contends that his conviction must be reversed because the District Court refused to reveal the identities of informers who had information helpful to the defense, and denied his motions for discovery and an *in camera* hearing on the issue of informant percipiency. In determining whether the District Court ruled properly, we recognize that "the government's privilege to withhold an informer's identity must give way where his identity is 'relevant and helpful to the defense of the accused, or is essential to a fair determination' of his case." *United States v. Kelly,* 449 F.2d 329, 330 (9th Cir. 1971), *quoting, Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639, 644–45 (1957). However, "[m]ere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in the protection of the informer." *Lannom v. United States,* 381 F.2d 858, 861 (9th Cir. 1967). Our decisions have placed the burden of proof upon the defendant to show the need for disclosure. *See, e. g., United States v. Marshall,* No. 74–2070, 526 F.2d 1349, 1359 (9th Cir. 1975); *United States v. Alvarez,* 472 F.2d 111, 113 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); *United States v. Estrada,* 441 F.2d 873, 879 (9th Cir. 1971); *Gaylor v. United States,* 426 F.2d 233, 234–35 (9th Cir. 1970).

Here, Marshall made no such showing for disclosure of the informers which would outweigh the government's interest in protecting them as sources of information. Marshall merely speculated that disclosure would be beneficial to his defense. Such speculation was not sufficient to require disclosure. Nor did the District Court abuse its discretion in denying Marshall's motions for discovery and an *in camera* hearing on the issue of informant percipiency. *Accord, United States v. Mar-*

*shall,* No. 74–2070, 526 F.2d 1349, 1359 (9th Cir. 1975). *Cf. United States v. Anderson,* 509 F.2d 724, 729–30 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975).

## V. *Use of Prior Felony Convictions for Impeachment Purposes.*

█ Prior to testifying in his defense, Marshall requested the District Court to preclude the government from impeaching him by his prior felony convictions. The court denied his motion. On appeal, Marshall contends that the court's ruling was an abuse of discretion and prejudicial error.

The law of this Circuit, at the time of Marshall's trial, was well summarized in our decision in *United States v. Villegas,* 487 F.2d 882, 883 (9th Cir. 1973), where we stated: "[T]his court has shown no disposition to abandon its long-standing rule that proof of any prior felony conviction may be given by the adversary to impeach any witness, including a defendant who elects to testify in a criminal trial." [1] *See McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 1471 28 L.Ed.2d 711, 730–31 (1971); *Burg v. United States,* 406 F.2d 235, 236–37 (9th Cir. 1969).

Hence, under the law of this Circuit at the time of Marshall's trial, the admission of his prior felony convictions for impeachment purposes was not error.

## VI. *Use of Prior Heroin Conviction to Prove Knowledge, Intent, and Motive in a Cocaine Case.*

█ At trial, Marshall's prior conviction for possessing heroin with intent to distribute was admitted to prove knowledge, intent, and motive in regard to the cocaine charge. On appeal, Marshall submits that

the district judge committed prejudicial error in admitting the heroin conviction for this purpose.

We have considered this argument previously and have rejected it. *See United States v. Marshall,* No. 74–2070, 526 F.2d 1349, 1360–61 (9th Cir. 1975); *United States v. Perez,* 491 F.2d 167, 171–72 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). In the first *Marshall* case, we stated:

"Generally, of course, proof of other crimes is not admissible to show the defendant's bad character or that he was likely to have committed the crime charged. [case cited]. Such evidence, however, can be admitted for other proper purposes, such as to show a common scheme or design, a motive or intent, the absence of mistake or accident, or that the acts are so inextricably connected with the crime charged as to tend to prove it. [cases cited]. The cocaine in this case was admitted only against defendants Marshall and Harris to show knowledge, intent, and motive. Both heroin and cocaine are 'narcotic drugs' under 21 U.S.C. § 802(16); If the jury could find Marshall knew the character and uses for the cocaine, they might reasonably infer that he knew the character and uses for the heroin. *See United States v. Perez,* 491 F.2d 167, 171–72 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). To eliminate undue prejudice, the district judge specifically instructed the jury that proof of possession of the cocaine could not be considered in determining whether Marshall or Harris did any of the acts charged in the indictment. . . .[2]

---

1. *But see* Federal Rules of Evidence 609(a), which became effective after Marshall's trial. That Rule provides:

 "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court deter-

mines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

2. Similarly here, the district judge instructed the jury as follows:

 "Now in addition, in this case the fact that the accused, Odell Marshall committed an offense in November of 1973—and that exhibit will disclose the exact date—is not any

Reviewing the record, '[w]e cannot say that the district court abused its discretion in deciding that the tendency of the cocaine evidence to prove the essential element of knowledge outweighed its potential prejudicial effect upon the accused.' *United States v. Perez, supra,* 491 F.2d at 172."

526 F.2d at 1360.

Similarly here, if the jury could find that Marshall knew the character of, and uses for, heroin, it might reasonably infer that he knew the character of, and uses for, cocaine. Further, the district judge here specifically instructed the jury that Marshall's prior heroin conviction was admitted against him only to show his knowledge, intent, and motive. Thus, we hold that the district judge's ruling admitting Marshall's heroin conviction to prove knowledge, intent, and motive in a cocaine case was proper.

### VII. *Discovery Request for Los Angeles Police Department Reports.*

In a pre-trial discovery motion, Marshall requested the Los Angeles Police Department reports of Officers Stirwalt, Niles, Whitehead, Lopez, Hardin, and Stanley pertaining to all defendants in certain other cases in which said officers had arrested certain persons during one month after and five months prior to the arrests in the instant case, wherein said officers obtained a consent to search or claimed evidence was in plain view.[3] The district judge denied the motion. On appeal, Marshall argues that the discovery of these reports constituted his only opportunity to effectively impeach the government's main witness, Officer Niles, and, hence, the district judge's denial of his request was reversible error.

■ At the time of Marshall's trial, Federal Rule of Criminal Procedure 16(b) permitted the defendant to discover books, papers, documents, and other tangible objects which were "within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request [was] reasonable." In interpreting this rule, courts have held that the granting of a discovery motion within Rule 16(b) is a matter within the trial court's discretion which will not be disturbed on appeal unless there was a clear abuse of discretion. *See United States v. Calhoun,* 510 F.2d 861, 870 (7th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975); *United States v. Baxter,* 492 F.2d 150, 175 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *Mullins v. United States,* 487 F.2d 581, 589 (8th Cir. 1973); *United States v. Newman,* 476 F.2d 733, 739 (3rd Cir. 1973); *Holt v. United States,* 272 F.2d 272, 276–77 (9th Cir. 1959).

evidence or proof whatever that in January he committed the offense charged in the indictment, even though both offenses are of a like nature. Evidence of an alleged earlier offense of a like nature may not be considered by the jury in determining whether or not an accused did the act charged in the indictment, nor may such evidence be considered for any other purpose whatever unless the jury first finds that other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused—in this case as to that particular offense, Odell Marshall—did the act charged in the indictment. "If the jury should find beyond a reasonable doubt from the other evidence in the case that the accused, Odell Marshall, did the act charged in the indictment, then the jury may consider evidence as to an alleged earlier offense of a like nature in determining the state of mind or intent with which the ac-

cused did the act charged in this indictment. And where all of the elements of an alleged earlier like offense are established by evidence which is clear and conclusive the jury may, but is not obliged to, draw the inference and find in doing the act charged in the indictment that the accused, in this case Odell Marshall, acted wilfully with specific intent and not because of mistake or accident or other innocent reason."
R.T. 747–48.

**3.** In relevant part, Marshall's pre-trial discovery motion sought:
"1. All arrest reports of the above officers for one month after and five months prior to the arrest in the above-entitled case which involved defendants from whom the officers allegedly obtained a consent to search or claimed evidence was in plain view."
C.T. 58.

The requirement of materiality when seeking discovery under Rule 16(b) signifies that the pre-trial disclosure of the evidence in question must enable the accused to substantially alter the quantum of proof in his favor. *See United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975); *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973). The reasonableness requirement of the Rule demands that "a request for documents must not be unduly burdensome to the Government, and, equally important, must be framed in sufficiently specific terms to show the Government what it must produce." *United States v. Ross, supra*, at 763. *See United States v. Hauff*, 473 F.2d 1350, 1355 (7th Cir.), *cert. denied*, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973).

Applying these principles to the facts before us, we cannot say that the district judge abused his discretion in denying Marshall's discovery motion. Any information discovered would have had a great potential for confusing the issues at trial. Further, Marshall's request imposed an unduly burdensome task upon the prosecution. Indeed, the discovery motion could very well be viewed as a "fishing expedition," in the hope that some favorable evidence would turn up. Such "[g]eneral descriptions of the materials sought and conclusory arguments as to their materiality have been rejected repeatedly as insufficient under Rule 16(b)." *United States v. Ross, supra*, at 763 & 763 n.8.

## VIII. *Admissibility of Chemist's Report.*

Marshall contends that the District Court's admission of the chemist's report, identifying the white powder found in Maxwell's apartment as cocaine, and the court's refusal to strike the chemist's testimony deprived him of his sixth amendment right of confrontation. Marshall's argument is based on the premise that under cross-examination, the police chemist testified that he did not have any independent recollection of the tests he performed. The trial judge permitted the introduction of the report as past recollection recorded.

As stated by Wigmore, "[i]t cannot be doubted that the use of a recorded past recollection . . . now occupies a firm and unassailable place in our practice and doctrine." 3 Wigmore, Section 736 at 70 (3rd ed.) The justification for this practice "is safeguarded by the requirements that (1) the witness acknowledge the document as accurate, and (2) that it be prepared 'contemporaneously' with the events." *Goings v. United States*, 377 F.2d 753, 760 n. 8 (8th Cir. 1967); *see Papalia v. United States*, 243 F.2d 437, 441 (5th Cir. 1957); McCormick, Evidence, § 9, p. 15 (1954); 3 Wigmore, §§ 734, 755 (3rd ed.); *see generally* Federal Rules of Evidence 803(5).[4] Further, "[t]he application of this doctrine . . . does not involve any deprivation of the right of confrontation as the Sixth Amendment has been interpreted and construed." *United States v. Kelly*, 349 F.2d 720, 770 (2nd Cir. 1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); *accord, United States v. Smalls*, 438 F.2d 711, 714 (2nd Cir. 1971).

Applying the above principles to the facts before us, the police chemist here testified that he analyzed Exhibits # 2: .05 grams of cocaine, # 3: .01 milligrams of cocaine, and # 4: 0.1 grams of cocaine, all on January 17, 1974. At that time, he prepared an analyzed evidence report, Exhibit # 17, which he used to record his findings that said exhibits were cocaine. Thus, although the chemist had no independent recollection of the results of the tests he performed, his analyzed evidence report, which was both

---

4. Federal Rules of Evidence 803(5) provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .

"(5) *Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

acknowledged by him to be accurate and prepared contemporaneously with the conducting of the relevant tests, was properly ruled admissible by the district judge as past recollection recorded.

### IX. *Marshall's Motion to Admit the Mannite into Evidence.*

 At the hearing on co-defendant Maxwell's motion to suppress, Officer Niles testified that subsequent to the arrest of Maxwell, he found mannite, which is commonly used to cut cocaine, in Maxwell's kitchen cabinet. Because Maxwell's consent to the search was not freely and voluntarily given, the district judge sustained his motion and excluded the mannite from evidence. *See United States v. Heimforth,* 493 F.2d 970, 972 (9th Cir. 1974).

Prior to trial, Marshall's counsel informed the court that he intended to move the mannite into evidence to show that the cocaine belonged to Maxwell. The court denied the motion. Marshall asserts that the court committed prejudicial error in so ruling in that the mannite should have been admitted into evidence or a severance should have been granted.

In examining Marshall's claim, we note that "[a] trial court will not be reversed on evidentiary rulings unless the error is shown to be prejudicial." *Smith v. United States,* 407 F.2d 356, 359 (8th Cir.), *cert. denied,* 395 U.S. 966, 89 S.Ct. 2113, 23 L.Ed.2d 753 (1969); *see United States v. Ledesma,* 499 F.2d 36, 39–40 (9th Cir.), *cert. denied, sub nom., Quiroz-Santi v. United States,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974); *United States v. Castro,* 476 F.2d 750, 752 (9th Cir. 1973). Upon examining the record, we cannot say that Marshall was prejudiced by the district judge's ruling. Both co-defendants Maxwell and Howard testified at trial and both were subjected to examination regarding the events which occurred on the date of the offense. Even assuming that the district judge's ruling was improper, such error, in view of the overwhelming weight of Marshall's guilt, was harmless beyond a reasonable doubt. *See United States v. Castro, supra,* 476 F.2d at 752.

### X. *Defense Counsel's Closing Argument.*

During closing argument, Marshall's counsel attempted to read to the jury certain portions of opinions in which various courts had found that officers who had testified in certain cases had committed perjury. Because counsel was not permitted to include this material in his summation, Marshall contends that the district judge committed reversible error.

 Marshall's argument is without merit. We have long held that the trial judge's discretion in his management of the trial is wide, and that prejudicial error is committed only when that discretion is abused. *See United States v. Aguiar,* 472 F.2d 553, 555 (9th Cir. 1972); *Robinson v. United States,* 401 F.2d 248, 252 (9th Cir. 1968); *see also United States v. Trapnell,* 512 F.2d 10, 12 (9th Cir. 1975). Here, the trial judge believed that defense counsel's reading of certain opinions to the jury was of marginal relevance and did not justify delaying the trial and possibly confusing the trier of fact. We cannot say that the trial judge abused his well-recognized discretionary power in curtailing defense counsel's closing argument.

### XI. *Trial Court's Instructions to The Jury.*

#### A. *Instructions on Defendant's Theory of the Case.*

 On appeal, Marshall argues that the trial court committed prejudicial error in refusing to give his proposed jury instructions 6, 7, and 8 which related to his theories of defense. Our reading of the instructions given does not reveal any substantial prejudice. Indeed, the court carefully instructed the jury on Marshall's theory of defense. As this Court has held previously, "the trial judge is not required to give a requested instruction as long as the substance of the instruction is covered in the over-all charge." *United States v. Valenzuela-Mendoza,* 452 F.2d 773, 774 (9th Cir. 1971); *see United States v. Sambrano,*

505 F.2d 284, 287 (9th Cir. 1974); *United States v. Harvey*, 428 F.2d 782, 784 (9th Cir. 1970). Because the trial court did instruct fully on Marshall's theory of defense here, we find his argument to be without merit.

B. *Instructions on Government's Burden of Proof.*

 Marshall contends that the trial court improperly failed to instruct the jury on the necessity of finding each element of the offense charged proven beyond a reasonable doubt. Upon examining the record, we note that the first time the trial judge instructed the jury he did state that the government must prove each element of the offense beyond a reasonable doubt. However, when he reinstructed the jury, the district judge failed to give this instruction and Marshall's attorney timely objected. The judge overruled the objection, commenting that he had given this instruction previously and did not want to repeat it again. The trial judge, however, in reinstructing the jury, did state the elements of the crime which had to be proven and repeated at various points that the standard was proof beyond a reasonable doubt.

We conclude that the better course of action would have been for the trial judge to have repeated to the jury that the government must prove each element of the crime charged beyond a reasonable doubt. Such conduct, considering the facts of this case, however, did not constitute prejudicial error. The judge had previously informed the jury, in his initial reading of instructions, of the proper burden of proof. In addition, upon reinstructing the jury, the judge reminded the jury: "[I]n order for that defendant to be convicted the evidence must satisfy you beyond a reasonable doubt that that defendant committed the offense." R.T. 783. "We must presume that the jury followed the court's instruction." *Cook v. United States*, 354 F.2d 529, 532 (9th Cir. 1965), *following, Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 367, 83 S.Ct. 448, 463–64, 9 L.Ed.2d 357, 374–75 (1963); *see United States v. Hersh*, 464 F.2d 228, 232 (9th Cir.), *cert. denied*, 409

U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972). We "are not permitted to assume the contrary." *King v. United States*, 279 F.2d 342, 344 (9th Cir. 1960). Accordingly, when we find that the trial judge had previously informed the jury in explicit terms that each element of the charged offense must be proven beyond a reasonable doubt, we hold, under the facts of this case, that the court properly instructed the jury on the elements of the offense and the government's burden of proof.

C. *Instructions on Aiding and Abetting.*

 Marshall argues that the trial court erred in instructing the jury on the law of aiding and abetting. At trial, he objected to Devitt and Blackmar *Federal Jury Practice and Instructions* §§ 11.07 and 11.08 on the ground that these instructions were "confusing." R.T. 626. Marshall's contention is without merit. These instructions were entirely proper and "have been approved many times." *Sewell v. United States*, 406 F.2d 1289, 1293 (8th Cir. 1969).

 In addition to the Devitt and Blackmar instructions, the trial judge also gave the jury other instructions which Marshall objects to on appeal. We note, however, that when the trial judge gave these instructions, Marshall's counsel failed to object to them. Hence, Marshall is raising this issue for the first time on appeal. As we have previously stated, "absent the presence of plain error, a basis for objection not raised at the trial level cannot be urged for the first time in the Court of Appeals." *United States v. Machado*, 457 F.2d 1372, 1375 (9th Cir. 1972); *accord, United States v. Jeffery*, 473 F.2d 268, 270 (9th Cir. 1973); *Yeater v. United States*, 397 F.2d 975, 976 (9th Cir. 1968). Having failed to raise this objection before the trial judge, Marshall cannot now be heard to complain.

XII. *Classification of Cocaine as a Narcotic Drug.*

 Marshall argues that cocaine is not a narcotic drug and therefore the classification of cocaine with opiates as a narcotic drug is arbitrary and irrational, hence, de-

priving him of his constitutional rights. As we stated in *United States v. Perez,* 491 F.2d 167, 172 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974), "[b]oth heroin and cocaine are 'narcotic drugs' under 21 U.S.C. § 802(16) and possession of either with intent to distribute is a criminal offense under the same section. 21 U.S.C. § 841(a)(1)." *See United States v. Marshall,* No. 74–2070, 526 F.2d 1349, 1360–61 (9th Cir. 1975).

We must reject Marshall's argument here. Congress has a rational basis for classifying cocaine as a narcotic drug. Marshall's argument should be addressed to "the legislature and not [to] the courts." *United States v. Rodriguez-Camacho,* 468 F.2d 1220, 1222 (9th Cir. 1972); *United States v. Harper,* 530 F.2d 828 (9th Cir. 1976).

XIII. *Conclusion.*

Having considered the issues raised by Marshall on appeal and finding no merit in them, the judgment of the district court is *affirmed.*